UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


ALBERT CUNNINGHAM

CIVIL ACTION

VERSUS

NUMBER 06-602-RET-SCR

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL
COLLEGE, ET AL

## **<u>NOTICE</u>**

Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein.  Failure to file written
objections to the proposed findings, conclusions and
recommendations within ten days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, August 15, 2008.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


ALBERT CUNNINGHAM

VERSUS

BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL
COLLEGE, ET AL

CIVIL ACTION

NUMBER 06-602-RET-SCR

## **MAGISTRATE JUDGE'S REPORT**

Before the court is a Motion for Partial Summary Judgment filed by defendants the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College and Ed Laws. Record document number 27.  The motion is opposed.[1]

Careful consideration of the summary judgment evidence and the applicable law supports the recommendation that the defendants' motion be granted.

## **Background**

Plaintiff Albert Cunningham filed suit in state court against the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU") and Ed Laws, the Dean of the LSU School of the Coast and Environment.  Plaintiff alleged violations of both federal and state laws, specifically 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e,

---

[1]  Record document number 33.   Plaintiff also filed a supplemental memorandum and the defendants filed a reply memorandum.  Record document numbers 36 and 39, respectively.

et seq.)("Title VII"), Title IX of the Education Amendments of 1972 (42 U.S.C. § 1681, et seq.)("Title XI"), and LSA-R.S. 23:967. Plaintiff claimed that defendant Laws engaged in conduct that deprived him of his clearly established First Amendment right to report illegal activity and discrimination, his right to continued tenure track public employment, a liberty interest in his reputation, and his right to due process under the Fourteenth Amendment.  Plaintiff also alleged that the defendants' conduct constituted unlawful retaliation under Title VII and Title IX and illegal reprisal under LSA-R.S. 23:967.  Defendants removed the case to this court based on federal question jurisdiction and now move for partial summary judgment as to the plaintiff's claims under § 1983.

In support of the motion the defendants relied on a statement of material facts not in dispute, excerpts from the plaintiff's deposition, and copies of *The LSU Faculty Handbook, Code of Student Conduct,* and *Bylaws & Regulations - Board of Supervisors, Louisiana State University System.*[2]  Defendants argued that because the undisputed facts demonstrate that the plaintiff was speaking pursuant to his official duties, he cannot establish that the speech for which he claims he was fired is protected under the First Amendment.  With regard to the plaintiff's Fourteenth

---

[2]  Record document number 27-2; Defendants exhibit D-1, deposition of plaintiff; record document number 36, defendants exhibits A, B and C.

3

Amendment claim for deprivation of a property right in his employment, the defendants argued that the plaintiff did not have a protected property right because he was a non-tenured, term employee.  Defendants also argued that the plaintiff cannot establish a Fourteenth Amendment claim for deprivation of a liberty interest in his reputation for two reasons: (1)there is no evidence that LSU published the reasons for his termination, and (2) there is no evidence that he was denied other employment due to any stigma associated with the alleged false reasons for his discharge.

Plaintiff argued that there is a genuine dispute for trial on the question of whether his reporting of plagiarism and discrimination was pursuant to his official job duties.  Plaintiff also argued that the fact he was nominated for early tenure, and told that he would either get early tenure or be reappointed, demonstrates that he had a Fourteenth Amendment property interest in his employment.  Finally, the plaintiff maintained that he has a Fourteenth Amendment claim under *Paul v. Davis*, because the evidence shows he had to communicate the false reasons for his termination to prospective employers, and because he had a loss of productivity that harmed him professionally.

Plaintiff submitted an opposition to the defendants' statement

of material facts not in dispute,[3] and relied on his affidavit,[4] excerpts from his own deposition,[5] and excerpts from the depositions of Vincent Wilson,[6] Marian Callier,[7] Michael Wascom,[8] Margaret Rheams,[9] Edward Laws,[10] and James Richardson.[11]  Plaintiff also filed Exhibit 1 to his deposition, which is a time line of events,[12] and Exhibit 1 to Law's deposition, which is a letter dated February 20, 2006 authored by Russell L. Chapman, the former Dean of LSU's School of the Coast and Environment.[13]

## **Applicable Law**

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine

---

[3] Record document number 32.

[4] Plaintiff exhibit E (hereafter, plaintiff affidavit).

[5] Plaintiff exhibit A (hereafter, plaintiff deposition).

[6] Plaintiff exhibit B.

[7] Plaintiff exhibit D.

[8] Plaintiff exhibit F.

[9] Plaintiff exhibit G.

[10] Plaintiff exhibit H.

[11] Plaintiff exhibit I.

[12] Plaintiff exhibit C.

[13] Plaintiff exhibit J.  Chapman's tenure as the Dean of the school ended effective January 1, 2005; defendant Laws then became the Dean.  Plaintiff exhibit C, p. 4; plaintiff depo. pp. 66, 79; Statement of Material Facts Not in Dispute, ¶ 7.

issue of material fact and that the party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986). If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The court may not make credibility findings, weigh the evidence or resolve factual disputes. *Id.*; *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059, 112 S. Ct. 936 (1992).

The substantive law dictates which facts are material. *Littlefield v. Forney Independent School Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).

Under § 1983 a plaintiff must establish the deprivation of a right secured by the Constitution or laws of the United States,

committed by a person acting under color of state law. *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). Plaintiff's § 1983 claim in this case is grounded on the First and Fourteenth Amendments. The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. A First Amendment retaliation claim requires proof of the following elements: (1) an adverse employment action; (2) speech involving a matter of public concern; (3) the interest in speaking outweighs the employer's interest in promoting efficiency in the workplace, and (4) the employee's speech motivated the employer's adverse employment action. *Charles v. Grief*, 522 F.3d 508, 510, n. 2 (5th Cir. 2008).

The Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951 (2006), added a threshold layer to this analysis. *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008). *Garcetti* holds that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti*, 547 U.S. at 421, 126 S.Ct. at 1960. Therefore, the court must initially determine whether the employee's speech is pursuant to his or her official duties. Speech that is required by a plaintiff's job duties or part of his official duties is not protected by the First Amendment. *Id.; Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d

689, 693-94 (5th Cir. 2007).  As summed up by the Fifth Circuit in *Davis*: "Activities undertaken in the course of performing one's job are activities pursuant to official duties and not entitled to First Amendment protection."  *Davis*, 518 F.3d at 313.

Therefore, under *Garcetti* the focus is on the role the employee occupied when he communicated rather than the content of the speech.  *Williams,* 480 F.3d at 692.  "Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties."  *Id.*  Neither a formal job description, speaking on the subject matter of one's employment, or the fact that a public employee's statements are made internally is dispositive.  *Id.*; *Garcetti*, 547 U.S. at 421, 423, 126 S.Ct. at 1959, 1961.  However, cases are consistent in holding that when a public employee raises complaints or concerns about his job duties through the chain of command at his work, that speech is undertaken in the course of performing his job.  "If however a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen."  *Davis*, 518 F.3d at 313.

To establish a due process deprivation of a property interest under the Fourteenth Amendment, the plaintiff must demonstrate a legitimate claim of entitlement to that interest.  *Bd. of Regents*

*v. Roth*, 408 U.S. 564, 92 S.Ct. 2701 (1972).

> "Property interests are not created by the Constitution;
> rather, they stem from independent sources such as state
> statutes, local ordinances, existing rules, contractual
> provisions, or mutually explicit understandings."
> *Blackburn v. City of Marshall*, 42 F.3d 925, 936-37 (5th
> Cir.1995) (citing *Perry v. Sindermann*, 408 U.S. 593,
> 599-601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)). Nor are
> property interests created by unilateral understanding or
> belief: "To have a property interest in a benefit, a
> person clearly must have more than an abstract need or
> desire for it. He must have more than a unilateral
> expectation of it. He must, instead, have a legitimate
> claim of entitlement to it." *Roth*, 408 U.S. at 577, 92
> S.Ct. 2701.

*Watson v. North Panola School Dist.*, 188 Fed.Appx. 291, 294 (5th
Cir. 2006).

In the context of public employment, a public employee may
have a constitutionally protected property interest in continued
employment if he can demonstrate a reasonable expectation of
continued employment. The nature of the property right in
employment is determined by state law. *Conner v. Lavaca Hosp.
Dist.*, 267 F.3d 426, 437 (5th Cir. 2001); *Roth*, 408 U.S. at 568, 92
S.Ct. at 2704. In other words, a property interest is not
incidental to public employment; it must be created by an
independent source such as state law. *Muncy v. City of Dallas,
Tex.*, 335 F.3d 394, 398 (5th Cir. 2003), citing, *Perry v.
Sindermann*, 408 U.S. 593, 601-03, 92 S.Ct. 2694, 2700 (1972). In
general, a property interest is created when the public entity has
acted to confer, or alternatively has created conditions which
infer the existence of, a property interest by abrogating its right

to terminate an employee without cause.  This abrogation may take the form of a statute, rule, handbook, or policy which limits the condition under which the employment may be terminated.  Or it may take the form of a more particularized mutual understanding with the employee.  Ultimately, the question of whether a property interest exists is an individualized inquiry which is guided by the specific nature and terms of the employment at issue, and informed by the substantive parameters of the relevant state law.  *Id*.

The Supreme Court has also recognized that a state's employment decisions might implicate Fourteenth Amendment liberty interests.  *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000), citing, *Roth*, 92 S.Ct. at 2707.  "[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."  *Id*.  "Neither damage to reputation alone nor the stigma resulting from the discharge itself trigger the protections of due process."  *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006).[14]  A liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only if an employee is discharged in a manner that creates a false and defamatory impression about him which

---

[14] Standing alone, proof that an employment decision might make a person less attractive to other employers, or concern about the impact of the plaintiff's discharge on his general reputation, are insufficient to give rise to a liberty interest.  *Hughes*, 204 F.3d at 226.

stigmatizes him and precludes him from other employment opportunities. *Id*.

The Fifth Circuit uses a seven element "stigma-plus-infringement" test to determine whether a government employee has a remedy under § 1983 for deprivation of liberty interest without notice or an opportunity to clear his name. Plaintiff must prove: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name, and (7) the employer denied the request. *Bledsoe*, 449 F.3d at 653; *Hughes*, 204 F.3d at 226.

## Analysis

### First Amendment Retaliation Claim

Plaintiff asserted that the question whether his official job duties included reporting plagiarism and discriminatory treatment of students is "very much one in dispute".[15]  To the contrary, neither the undisputed facts nor the cases cited by the plaintiff support this assertion.

Plaintiff contended that he is not the district attorney in *Garcetti*, the human resources director in *Boykin*,[16] or the athletic

---

[15] Record document number 33, opposition memorandum, p. 6.

[16] *Boykin v. City of Baton Rouge,* 439 F.Supp.2d 605 (M.D. La. (continued...)

11

director in *Williams*.[17]  Yet, on the critical issue of whether his speech was pursuant to official duties, the plaintiff failed to point out any facts which distinguish the circumstances of his discharge from the material circumstances in these cases. Plaintiff attempted to rely on arguments and evidence that the matters he reported are of great public concern, and emphasized this fact by pointing out that plagiarism is a crime in Louisiana. This argument is unpersuasive.  That plagiarism and discrimination are public concerns and the types of activities that citizens report does not detract from the undisputed facts which establish the role the plaintiff occupied when he reported the plagiarism and alleged discrimination.[18]

Plaintiff was an assistant professor in the LSU Department of Environmental Studies.[19]  In December 2004 the plaintiff suspected that two students in his environmental toxicology class had plagiarized an assignment.  One of the students was a graduate student of Korean national origin and the other student was

---

[16](...continued)
2006).

[17] *Williams v. Dallas Indep. Sch. Dist.*, *supra*.

[18] "Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties."  *Williams*, *supra*.

[19] Statement of Material Facts Not in Dispute, ¶¶ 1 and 7.  The Department of Environmental Studies is a department within the School of the Coast and Environment.

Caucasian.   Plagiarism is a form of "academic misconduct" as defined in the university's *Code of Student Conduct*.  All faculty instructors must report this misconduct as required by the *LSU Faculty Handbook,* which states: "All instructors shall report suspected academic misconduct to the Dean of Students."  The *Code of Student Conduct* in § 7.1 also states, in relevant part, that when students are sanctioned for misconduct it "shall be based on the general principle of equal treatment" without regard to race and national origin.[20]

On December 14, 2004, the plaintiff met with Associate Dean of Students James Welles and reported both students for plagiarizing their essays.[21]  In January 2005 the plaintiff met with Welles, Ralph Portier,[22] who at that time was chairmen of the Department of Environmental Studies, the Korean student's thesis advisor Professor Margaret Rheams, and thesis committee member Michael Wascom.[23]  Welles explained that the student had to be assigned a

---

[20] Record document number 36, defendants exhibit B, *Code of Student Conduct*, § 5.1 and § 7.1; defendants exhibit A, *LSU Faculty Handbook*, p. 17; Statement of Material Facts Not in Dispute, ¶¶ 4-6.

[21] Plaintiff affidavit, ¶ 5; plaintiff depo., pp. 52-55; record document number 27-2, defendants Statement of Material Facts Not in Dispute, ¶ 3; *Code of Student Conduct*, § 9.1.

[22] Portier resigned as department chair in March 2005 and defendant Laws assumed the position of chairman at that time. Plaintiff exhibit C, Timeline of Events.

[23] Plaintiff affidavit, ¶ 8; plaintiff depo. p. 69.

failing grade for the class and suspended from school with no guarantee of readmission. However, at the meeting the plaintiff suggested that the Korean student be offered the university intervention program, and that his master's thesis be checked for plagiarism. Plaintiff late reported to Portier that the thesis appeared to be plagiarized.

After defendant Laws became Dean of the School of the Coast and Environment, the plaintiff received notification from the registrar's office that Laws had changed the Korean student's grade to a "B." The Caucasian student ultimately received a failing grade in the class. In May 2005 Laws also went to the plaintiff's office and told the plaintiff that Koreans did not understand plagiarism, and that it was his opinion the Korean student did not plagiarize. Laws questioned the plaintiff about how he found the plagiarism. Plaintiff told Laws that the Korean student should be treated like all the other students and accept responsibility for his plagiarism.[24] Shortly after this conversation between Laws and the plaintiff, a meeting was held on May 24, 2005 to discuss the plagiarism in the student's thesis.

Plaintiff, Laws, Rheams and Dean of Students Kevin Price attended the meeting. Plaintiff stated that Laws questioned his authority to look into the thesis and questioned whether he used a

---

[24] Plaintiff affidavit, ¶¶ 8, 10-12; plaintiff depo., pp. 60, 66-72.

14

discriminatory method to detect plagiarism.  According to the plaintiff, Price supported him since he followed the university's procedures on the plagiarism issue.[25]  However, Vince Wilson advised the plaintiff that he and Price did not understand the issue of Korean students and plagiarism, and told the plaintiff that he should not pursue the issue or continue to talk to Price about it.[26]

Plaintiff met with Vice-Provosts Frank Cartledge and Chuck Wilson and the Faculty Grievance Committee about Laws' behavior and the differential treatment the plaintiff believed that the Korean student was receiving.[27]  After the plaintiff was given his termination notice, he reported to both Cartledge and Wilson that Laws had accused him of gender bias and racism.  Plaintiff requested administrative assistance from Cartledge and was advised to submit his case to the Faculty Senate Grievance Committee.[28] Plaintiff submitted a grievance to the committee charging that both he and his wife were terminated by Laws in retaliation for the

---

[25] Plaintiff affidavit, ¶¶ 13 and 14; plaintiff depo., pp. 72-73.

[26] Plaintiff depo., pp. 72-79, 209-11.

[27] This occurred in June 2005.  Plaintiff stated that he met with Cartledge and Wilson because by that time Laws had also taken over as chairman of the Department of Environmental Studies. Plaintiff affidavit, ¶ 18.

[28] Defendants exhibit A, *LSU Faculty Handbook*, p. 9.

plaintiff uncovering the plagiarism by the Korean student.[29]

It is apparent from a review of these facts, which are taken from the plaintiff's own affidavit and deposition testimony, that all of the communications regarding the plagiarism and discrimination reported by the plaintiff occurred in the workplace and within the plaintiff's chain of command. It is equally apparent that the communications were either required by or part of the plaintiff's official duties as an instructor and assistant professor. The only reasonable inference that can be drawn from these undisputed facts is that all of the plaintiff's communications about the issues arising from the Korean graduate student's plagiarism were made in his role as a professor, faculty member and employee of the university.

The summary judgment evidence, viewed as whole and in the light most favorable to the plaintiff, clearly demonstrates that the plaintiff's speech was undertaken in the course of performing his job, i.e., pursuant to official duties, and therefore, is not entitled to First Amendment protection. Defendants have demonstrated that there is no genuine dispute for trial as to the plaintiff's § 1983 claim based on First Amendment retaliation.

**Fourteenth Amendment Claim - Property Interest in Employment**

This claim focuses on the facts surrounding the plaintiff's

---

[29] Plaintiff affidavit, ¶¶ 18, 20 and 24.

application for promotion and early tenure in the 2004 fall semester, and the events leading to the plaintiff's receipt of a termination notice in July 2005.[30]  It is undisputed that at the time of these events the plaintiff did not have tenure and had not received any official notification that he had been reappointed.

Plaintiff was initially appointed for a three year term of employment that began January 15, 2002.  University regulations state unequivocally that a term employee is appointed for a specific period of time as indicated on the appointment form.  The regulations further provide:

> Expiration of Appointment. Upon expiration of a term appointment, the employee is a free agent to whom the University System has no obligation.  The University System may reappoint the employee to the same or a different position.  Non-reappointment carries no implication whatsoever as to the quality of the employee's work, conduct, or professional competence.[31]

These undisputed facts establish that the plaintiff did not have a constitutionally protected interest in his employment based on the applicable university regulations and policies.

Nevertheless, the plaintiff relied on evidence contained in his affidavit and deposition testimony to demonstrate that he had a Fourteenth Amendment property interest in his continued

---

[30] Plaintiff affidavit, ¶¶ 2-4, 20.  Plaintiff's application for promotion and early tenure was not approved.  Plaintiff depo., pp. 45-46; plaintiff exhibit C, pp. 5 and 16.

[31] Defendants exhibit C, *Bylaws & Regulations-Board of Supervisors, Louisiana State University System*, Section 2-7, pp. 26-27; Statement of Material Facts Not in Dispute, ¶¶ 1 and 2.

employment based on a theory of mutually explicit understanding.[32]
Plaintiff stated in his affidavit that he was told by Portier and
Chapman that he would either be promoted with tenure or reappointed
for three more years as an assistant professor.[33]   In his
deposition, the plaintiff testified that he understood from
discussions with Portier that there was no problem with an
application for an early promotion and tenure, there were no
shortcomings in his application, and the vote within the department
was unanimous to move forward with his application.[34]   Plaintiff
testified that Chapman never did anything to indicate that he was
"anything other than being reappointed," and that Chapman's letter
supporting his promotion "implied" that he would be around to go up

---

[32] Plaintiff cited and relied on *Perry v. Sinderman*, *supra*.
*Perry* set forth the principle that the lack of a formal contract or
tenure system is not entirely dispositive of the issue of whether
a public employee has a protected property interest under the
Fourteenth Amendment.  The Court in *Perry* found that the college's
policies and practices over time had created a de facto tenure
program that justified the employee's legitimate claim of
entitlement to continued employment absent sufficient cause.
*Perry*, 408 U.S. at 601-02, 92 S.Ct. at 2699-700.

[33] Plaintiff affidavit, ¶ 3.

[34] Plaintiff depo., pp. 43-50, 168-81. See also plaintiff
exhibit J, letter written by Chapman dated February 20, 2006.
Chapman did not state in the letter that he promised the plaintiff
continued employment for three more years if he did not get early
tenure.   Chapman essentially stated that he assumed or expected
that the plaintiff would get reappointed, and that if the
department would have recommended the plaintiff's reappointment
while he was still Dean he would have approved it.   Chapman stated
that Laws replaced him as Dean on January 1, 2005, and that in 2005
he (Chapman) did not have any involvement in the plaintiff's
employment.

for promotion some time in the future.[35]

It is apparent from a review of this evidence that the plaintiff did not testify in his deposition that he was "promised continued employment" by Portier and Chapman.  Yet, the plaintiff stated in his affidavit that he "was promised continued employment for three more years if I did not get early tenure by the Chair and former Dean Russ Chapman."[36]  This statement is inconsistent with and contradicts the plaintiff's deposition testimony.  Thus, it is insufficient to create a genuine dispute for trial on the question of whether the plaintiff had a mutually explicit understanding that he would be reappointed for a second three year term of employment.[37]

Plaintiff did not testify, and there is no evidence to support finding, that he ever received any written notification from Chapman or Portier that he was reappointed after his initial three year term ended on December 31, 2004.[38]  At the time the plaintiff's three year term ended, Laws had replaced Chapman as Dean of the School of the Coast and Environment.  The evidence put forth by the

---

[35] *Id.*

[36] Plaintiff affidavit, ¶ 3.

[37] *See*, *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)(a party cannot defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony).

[38] Plaintiff depo., pp. 173-75; plaintiff exhibit C, p. 4.

plaintiff shows that a budget adjustment continued the plaintiff in pay status after the expiration of his initial term of employment.[39] In late June 2005, the faculty voted on a recommendation for the plaintiff's reappointment that was ultimately rejected by Laws.  On July 14, 2005, Laws notified the plaintiff that he would not be reappointed to another term, and the plaintiff's employment was extended for a terminal year until July 2006.[40]  Plaintiff did not present any evidence that Laws did not have the authority to make this decision.

The only reasonable inference from this uncontested evidence is that there was no mutually explicit understanding to reappoint the plaintiff at the expiration of his first term or a guarantee that he would be reappointed.[41]  In the absence of such evidence, the plaintiff's unilateral expectation that he had been or would be reappointed for another term does not constitute a constitutionally protected property interest in employment under the Fourteenth Amendment.[42]

---

[39] Plaintiff exhibit C, pp. 10, 14-17; plaintiff depo., pp. 169, 180-81; plaintiff affidavit, ¶¶ 19 and 20.

[40] Statement of Facts Not in Dispute, ¶¶ 9 and 10.

[41] Plaintiff relied on *Perry v. Sinderman*, *supra*, but failed to explain how the facts of this case are similar to the relevant facts in *Perry*.  It is apparent that the evidence here is not in any way like the facts giving rise to the "de facto" tenure program in *Perry*.

[42] Without a constitutionally protected property interest in
(continued...)

**Fourteenth Amendment Claim - Liberty Interest in Reputation**

Defendant contended that the plaintiff's claim for deprivation of a liberty interest in his reputation fails for two reasons. According to the defendant, there is no evidence that the plaintiff's professional reputation has been damaged, and no evidence that the university communicated or publicized the reasons for his termination to any third party.

Plaintiff argued that the evidence shows that the defendant's stated reasons for his termination were defamatory, and that he had to communicate these reasons to potential employers. Plaintiff also claimed that there is evidence that his professional reputation was damaged because he was not able to carry tenure to another university, and he lost productivity in terms of writing grants and research papers.

Plaintiff's argument is unpersuasive. Plaintiff failed to cite any evidence that the alleged stigmatizing charges involving his termination were made public by the defendant. The only evidence relied on by the plaintiff to support this element of his claim was his testimony that he had to communicate the reasons to prospective employers. However, the Fifth Circuit specifically

---

[42](...continued)
his employment, any allegations and evidence that Laws did not follow proper procedures during the events leading to the termination notice are not relevant to the Fourteenth Amendment due process claim.

rejected this "self-publication rationale" in *Hughes v. City of Garland*.[43]

With regard to the fifth element, the Fifth Circuit requires that the public disclosure be fairly attributable to the defendant employer.  Evidence that a plaintiff must disclose the reason for being discharged to potential employers cannot support a finding that public disclosure is fairly attributable to the employer, i.e. that the charges were made public by the defendant.[44]  Since the plaintiff has no evidence on this essential element, the defendant is entitled to summary judgment as a matter of law on the plaintiff's Fourteenth Amendment claim for deprivation of a liberty interest in his reputation.

## **Recommendation**

It is the recommendation of the magistrate judge that the Motion for Partial Summary Judgment filed by defendants the Board of Supervisors of Louisiana State University and Agricultural and

---

[43] 204 F.3d at 228.

[44] In his affidavit the plaintiff provided a vague statement of the information he claimed that he was compelled to communicate to potential employers.  Plaintiff stated:
> I was obligated to tell my potential employers the truth about Dean Laws's termination notice.  I explained that shortly after I had been nominated for early promotion and tenure, and also reappointed for three more years, I was terminated six months into that reappointment.

Plaintiff affidavit, ¶ 25.  This statement does not indicate that the plaintiff communicated to the potential employers any information about the alleged stigmatizing charges made against him.

Mechanical College and Ed Laws, be granted, dismissing the plaintiff's claims under 42 U.S.C. § 1983 for First Amendment retaliation and Fourteenth Amendment deprivation of property and liberty interests in his employment and reputation.

Baton Rouge, Louisiana, August 15, 2008.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE